UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
OLATOYOSI T. ADESINA,                          :
                                               :
                   Plaintiff,                  :
                                               :          DECISION AND ORDER
       - against -                             :          12-CV-3184 (WFK)
                                               :
MICHAEL J. ASTRUE,                             :
COMMISSIONER OF SOCIAL SECURITY,               :
                                               :
                   Defendant.                  :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff Olatoyoi T. Adesina brings this action pursuant to 42 U.S.C. § 405(g), alleging that
Defendant, the Commissioner of Social Security (the "Commissioner"), improperly denied her
application for Social Security disability insurance benefits. Defendant moved for an order
affirming the Commissioner's decision based upon the pleadings. Plaintiff filed a cross-motion
seeking judgment on the pleadings, requesting that Defendant's motion be denied and that
Administrative Law Judge ("ALJ") Margaret L. Pecoraro's decision be reversed. For the reasons
that follow, this Court vacates the Commissioner's decision denying disability benefits and
remands the case to the ALJ for further consideration consistent with this decision.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was 56 years old at the onset of the medical conditions at issue. *See* Dkt. 15-1

(Administrative Record ("R.")), at 98. Plaintiff formerly worked as a substitute/special

education teacher, a home health aide, and a real estate agent. *Id.* at 35. Plaintiff alleges that as

of March 15, 2009, her medical conditions, spondylosis, bursitis, and glaucoma, rendered her

incapable of performing any work. *Id.* at 98.

Plaintiff filed an application for disability insurance benefits and Supplement Security

Income under Title II and XVI of the Social Security Act (the "Act"), respectively, on January 6,

2010. R. at 98–108, 145. Plaintiff's application was denied on March 3, 2010. *Id.* at 46–47.

Plaintiff requested an administrative hearing, which was held on December 6, 2010 before ALJ

Margaret Pecoraro. *Id.* at 30–45, 56–58. In a decision issued on January 19, 2011, the ALJ found Plaintiff not disabled. *Id.* at 9–29. This became the Commissioner's final decision on May 4, 2012 when the Appeals Council denied Plaintiff's request for review. *Id.* at 1–4.

During the pendency of her appeal, Plaintiff provided the Appeals Council with post-decision reports from Dr. Donald Goldman, M.D., dated July 11 and 12, 2011. R. at 4. The Appeals Council considered this report as part of the record but found that it did not provide a basis for changing the ALJ's Decision. *Id.* at 1–2.

## STANDARD OF REVIEW

When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004), *am. on reh'g,* 416 F.3d 101 (2d Cir. 2005); *see also Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB,* 305 U.S. 197, 229 (1938)); *Moran,* 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel,* 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure

that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture,* 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (Sullivan, J.) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)) (quotation marks omitted). To fulfill this burden, the ALJ must "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks omitted) (quoting *Kuleszo v. Barnhart,* 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (Siragusa, J.)).

Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 83.

## DETERMINATION OF DISABILITY

### I. Applicable Law

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairments in question must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (Sotomayor, Cir. J.). The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at step five. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the next step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her residual functional capacity, work experience, age, and education. 20 C.F.R. § 404.1520(a)(4)(v).

## II. The ALJ's Decision[1]

In her January 19, 2011 decision, the ALJ used the five-step process and found that: 1) Plaintiff has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date; 2) Plaintiff has the following severe impairments: chronic bursitis of the shoulders and mild cervical spondylosis; 3) Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) Plaintiff has the residual functional capacity to perform the full range of "light work," as defined in 20 C.F.R. 404.1567(b)[2]; 5) Plaintiff is capable of performing past relevant work as a teacher, office clerk, and real estate agent; and 6) Plaintiff has not been under a disability, as defined in the Social Security Act, since March 15, 2009 through the date of the Decision. R at 14–15, 24. In addition to finding that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work, the ALJ noted that Plaintiff "cannot perform frequent overhead reaching with the upper left extremity." R. at 15.

In determining that Plaintiff has the RFC to perform light work, the ALJ considered Plaintiff's testimony and written submissions, as well as the medical opinions of Plaintiff's treating physical therapist, an examining ophthalmologist, an examining orthopedic surgeon, and

---

[1] In reviewing the ALJ's thorough recitation and summarization of the record in this matter, the Court assumes the parties' familiarity with the decision and the record. This order will only highlight the portions of the decision necessary for this Court to articulate its reasons for remanding this matter to the Commissioner.

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," as well as "a good deal of walking or standing." 20 C.F.R. 404.1567(b).

a consultative orthopedic doctor[3] ordered at the Commissioner's behest. R at 17–18.

## A. The ALJ's Treatment of the Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff provided live testimony as well as written Disability and Function Reports. Plaintiff alleged that the following conditions limited her ability to work: glaucoma, a left shoulder injury, spondylosis of the cervical spine, a distal phalanx fracture, chronic back pain, and uterine fibroids. R. at 19.

Plaintiff testified that her daily activities included going to appointments, reading, and watching TV. R. at 19. She could go outside on her own and ride in a car. R. at 19. One to two times a month, Plaintiff would attend church, but she was only able to attend when a van driven by the pastor had availability to pick her up. *Id.* at 42. Plaintiff testified that her conditions made it impossible for her to do most household tasks, including laundry, cooking, and cleaning, although she could make herself a sandwich. *Id.* at 40. Plaintiff's nephew, daughter, and church members assisted her with these tasks. *Id.* at 19, 40–41. Plaintiff explained that she had trouble dressing herself approximately four times per week, although she only needed assistance in getting her left arm in her clothing. *Id.* at 42. Plaintiff "reported difficulty with lifting with her left arm, walking, stair climbing, sitting, squatting, bending, kneeling, and standing; and noted that she could only lift a gallon of milk with her right arm." R. at 19. Plaintiff was able to go for walks outside her house. *Id.* at 19, 39. Plaintiff testified that she could walk for about one and half blocks without pain and that after three blocks she would need to rest for one minute. *Id.* at 19, 39. Plaintiff further testified that she could only sit for 40 minutes and stand for 35 to 40 minutes. *Id.* at 39. Even when she would sit and watch TV, she would stand up during

---

[3] While Plaintiff challenges that Dr. Karlinsky-Bellini is not board-certified as an orthopedic, Plaintiff fails to cite any document in the record that clearly demonstrates that she is in fact not certified in this specialty. *See* Pl.'s Br. at 8, n.25.

commercials to alleviate the discomfort from static sitting. *Id.* at 40. Plaintiff testified that she was very weak and in pain "day and night." *Id.* at 20.

The ALJ rejected Plaintiff's testimony as not credible concerning the intensity, persistence, and limiting effects of her symptoms to the extent they were inconsistent with the ALJ's RFC assessment that Plaintiff could perform "light work." R. at 20. The ALJ found that Plaintiff's claims, regarding her pain and the limitations caused by her symptoms, were not corroborated by the overall record, particularly that the objective medical evidence "simply fail[ed]" to confirm the accuracy of Plaintiff's testimony. *Id.* The ALJ recited numerous exams and diagnostic procedures that she held did not support the allegations of pain and limitations being alleged by Plaintiff. *Id.* at 20–21. In particular, the ALJ focused on the February 2010 examination during which the consultative examiner found that Plaintiff was in no acute distress, had a normal gait, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from the chair without difficulty. *Id.* The ALJ further relied on medical evaluations concerning Plaintiff's left shoulder, left upper extremity, spine, and lower extremities that resulted in the consultative examiner opining that Plaintiff should only have difficulty lifting and carrying heavy objects. *Id.* The ALJ then highlighted the deficiencies she perceived with the November 2010 examination by the orthopedic surgeon, Dr. Sultan. *Id.* at 21. In particular, the ALJ noted that the examination failed to detect swelling or deformity in the left shoulder and that there were no numerical findings provided. *Id.* The ALJ characterized Plaintiff's medical treatment as "conservative" noting that Plaintiff was only taking Ibuprofen for her pain and had not been hospitalized. *Id.*[4]

---

[4] The ALJ also concluded that there was no medical evidence of any restriction caused by Plaintiff's uterine fibroids or glaucoma. *Id.*

The ALJ also found that Plaintiff's "reasonably broad range of daily living activities" undermined her credibility. *Id.* The ALJ concluded that it was significant that Plaintiff goes out for medical and public assistance appointments alone. *Id.* Also, the ALJ concluded that Plaintiff has "no problems with personal care," despite the testimony recounted above, because Plaintiff did not explain how her medical conditions precluded her from cooking, cleaning, and doing laundry, and the medical record did not demonstrate that she could not have engaged in such conduct. *Id.* The ALJ noted that Plaintiff was able to shower and dress herself daily with some assistance, but stated that the "type of such assistance was not specified or elaborated on." *Id.* Furthermore, the ALJ noted that at her *one* appointment with the consultative examiner, Plaintiff was able to dress herself for the examination. *Id.* The ALJ also noted Plaintiff's ability to walk for up to three blocks before needing to rest and testimony that Plaintiff could stand for 30 minutes at a time. However, the ALJ did not explain how this finding undermined Plaintiff's credibility. *Id.*

In sum, the ALJ found that the medical evidence did not support that Plaintiff could not work at the light level of exertion, that her alleged limitations did not preclude all work activity, and there was no medical evidence to support a limit on sitting, standing, or walking. *Id.* And for these reasons, the ALJ held that Plaintiff's assertion "cannot be accepted as entirely credible." *Id.*

**B. The ALJ's Treatment of the Plaintiff's Treating Source's Opinion**

Plaintiff's treating source for her musculoskeletal impairments was not a medical doctor, but a Doctor of Physical Therapy, Dr. Adenale S. Adeniola. Dr. Adeniola treated Plaintiff from July 24 to August 7, 2010, and her findings were entered into the Record through a Multiple Impairment Questionnaire. R. at 17. Dr. Adeniola opined that Plaintiff could not sit continuously in a work setting and should move around every 1-2 hours without sitting again for

2 hours. *Id.* at 17–18. Dr. Adeniola found that Plaintiff could lift and carry up to 10 pounds occasionally but had limitations in performing repetitive activities. *Id.* at 18. Dr. Adeniola concluded that Plaintiff had minimal limitations on her right upper extremity, but marked limitations with the left upper extremity. *Id.* She also concluded that Plaintiff could not push, pull, kneel, bend, or stoop. *Id.* Plaintiff received therapy three times a week, but no other medications were noted. *Id.* Dr. Adeniola concluded that Plaintiff's physical symptoms made Plaintiff incapable of performing even low stress jobs. *Id.* Dr. Adeniola also concluded that Plaintiff would need rest breaks for 2-3 hours per day during a normal workday and would likely be absent from work more than 3 times per month due to her impairments. *Id.*

The ALJ afforded Dr. Adeniola's opinion "little weight" finding that her opinions of Plaintiff's severe limitations were not supported by clinical findings or the evidence as a whole. R. at 22–23. The ALJ found Dr. Adeniola's opinions regarding Plaintiff's abilities to sit and stand/walk continuously, need to take breaks, likely days per month she would be absent from work, and pain causing frequent interference with attention and concentration unsupported by medical evidence. *Id.* at 22. The ALJ also found the following of Dr. Adeniola's opinions to be unsupported by medical evidence: that Plaintiff could only lift and carry up to 10 pounds occasionally; Plaintiff had "marked" limitations of the left upper extremity in grasping, turning, and twisting, and using the fingers/hands for fine manipulations, or using the arms for reaching. *Id.* at 22. In rejecting these opinions, the ALJ cited the medical evidence from Plaintiff's consultative orthopedic examination and Dr. Sultan's independent orthopedic examination. *Id.* at 22. The ALJ found it particularly damning that Dr. Adeniola's "best medical opinion" was that Plaintiff's symptoms and limitations applied since Plaintiff fractured her hand in 2001. *Id.* at 22–23. The ALJ found this opinion "utterly unsupported by the evidence or even by [Plaintiff's]

own allegations" particularly in light of the fact that Plaintiff had worked until 2007 with no reported problems. *Id.* at 22.

### C. The ALJ's Treatment of the Examining Physicians' Opinions

#### 1. Dr. Sultan – Examining Orthopedic Surgeon

The ALJ recounted the orthopedic examination and subsequent report by Dr. Leon Sultan, M.D., an orthopedic surgeon. R. at 18. Dr. Sultan opined that Plaintiff was no longer capable of working as a teacher or home health aide because of chronic pain in her neck, left shoulder, and upper left extremity, and found that her left shoulder injury rendered her permanently partially disabled.[5] *Id.* at 19. Dr. Sultan instructed Plaintiff to apply heat to her neck and left shoulder, use Ibuprofen, and engage in "gentle home exercises in order to maintain muscle tone and joint mobility." *Id.* Dr. Sultan opined that Plaintiff could sit for 2-3 hours and stand/walk for 2-3 hours in an 8 hour work day. *Id.* Furthermore, Plaintiff should not sit continuously, but should get up and move around each hour for 5-10 minutes before sitting again, and should avoid standing and sitting continuously in a work place setting. *Id.* Plaintiff would need hourly breaks for 5-10 minutes and would likely be absent from work more than 3 times per month due to her impairments. *Id.* Dr. Sultan concluded that Plaintiff could lift and carry up to 5 pounds occasionally, but that she had moderate limitations in repetitive motions with her left upper extremity. *Id.* Dr. Sultan also found that Plaintiff's symptoms would increase if she were placed in a competitive work environment and that her condition prevented her from keeping her neck in a constant position. *Id.* Additionally, Dr. Sultan found that Plaintiff's pain and other symptoms were frequently severe enough to interfere with her attention

---

[5] The ALJ noted that such determinations are reserved for the Commissioner. R. at 19 (citing Social Security Ruling 96-5p).

and concentration, but that emotional factors did not contribute to the severity of her symptoms and limitations. *Id.* Dr. Sultan opined that Plaintiff was capable of "moderate stress" jobs, but needed to avoid heights, pushing, pulling, kneeling, bending, and stooping. *Id.* Dr. Sultan found that his findings applied to Plaintiff since 2007. *Id.*

Although Dr. Sultan was a treating or examining source, the ALJ found that most of Dr. Sultan's opinions were unsupported by clinical factual findings or the evidence as a whole and gave most of his opinions "little weight." R. at 23. The ALJ rejected Dr. Sultan's finding of "permanent partial disability" with regard to the left shoulder as not recognized by the Commission. *Id.* The ALJ found Dr. Sultan's opinions regarding how much Plaintiff could lift, sit, stand, and walk as "baseless" and unsupported by any medical diagnoses or clinical evidence. *Id.* The ALJ rejected Dr. Sultan's opinions regarding Plaintiff's pain as there were no tests of attention or concentration performed. *Id.* The ALJ categorized Dr. Sultan's opinion regarding how much work Plaintiff would miss because of her symptoms as "only an estimate." *Id.* Additionally, the ALJ found Dr. Sultan's conclusion that Plaintiff had experienced these symptoms since 2007 to be "unsupported" because his first appointment with Plaintiff was not until November 2010, and the "opinions regarding such severe limitations [were] not even supported for that time period, much less back through 2007." *Id.* However, the ALJ did find that Dr. Sultan's opinions regarding restrictions on heavy lifting, carrying, pushing, and pulling as well as Dr. Sultan's finding of moderate limitations with the left upper extremity were supported by the record. *Id.*

### 2. Dr. Zoltan – Examining Ophthalmologist

The ALJ gave significant weight to the opinions of treating ophthalmologist Dr. Robert Zoltan, M.D., who found that Plaintiff had no visual disability caused by her glaucoma. R. at 22.

As Dr. Zoltan was an examining source with the proper expertise and his opinion was consistent with both clinical findings and the record as a whole, the ALJ found no basis to doubt Dr. Zoltan's credibility. *Id.*

### D. The ALJ's Treatment of the Consultative Orthopedic's Opinions

In February 2010, Dr. Victoria Karlinsky-Bellini, M.D., performed a consultative orthopedic examination at the behest of the Commissioner. R. at 17. Dr. Bellini's report indicated that Plaintiff appeared to be in no acute distress, had a normal gait, used no assistive devices, needed no help changing for the exam or getting on or off the exam table, and was able to rise from the chair without difficulty. *Id.* Plaintiff told Bellini that "she did not cook, clean, do laundry, or shop due to pain in her left arm and knee, but that she [was] able to shower and dress herself daily, with some assistance, type unspecified." *Id.* Dr. Bellini found that Plaintiff's left shoulder had a decreased range of motion, but that there was no muscle atrophy, no sensory abnormality, and normal reflexes in Plaintiff's left extremity. *Id.* Dr. Bellini found that Plaintiff had full range of her lower extremities, but found left shoulder and knee pain with no workup available for diagnosis. *Id.* Dr. Bellini concluded that Plaintiff's prognosis was fair. *Id.* Dr. Bellini opined that Plaintiff was unrestricted in sitting and moderately restricted in pushing, pulling, reaching, and lifting with the left upper extremity. *Id.* Dr. Bellini also noted that Plaintiff was mildly limited in standing, walking, climbing, and bending due to left knee pain. *Id.*

The ALJ awarded significant weight to Dr. Bellini's opinions that Plaintiff was unrestricted in sitting and mildly limited in standing, walking, climbing, and bending due to left knee pain. R. at 22. Further, she gave significant weight to Dr. Bellini's opinions that Plaintiff is unrestricted in pushing, pulling, reading, and lifting with the right upper extremity, but moderately restricted in performing these activities with the upper left extremity. *Id.* The ALJ

found that because Dr. Bellini was an examining source with the appropriate area of expertise and her opinions were consistent with the clinical findings and the evidentiary record as a whole, significant weight was warranted. *Id.* However, the ALJ did not apply even greater weight to Dr. Bellini's opinions because she did not provide specific ranges of weight that Plaintiff would be able to lift and carry or lengths of time that Plaintiff could sit, walk, and stand. *Id.* Additionally, the ALJ noted that Dr. Bellini only examined Plaintiff on one occasion. *Id.*

### E. The ALJ's RFC Analysis and Conclusions

After reviewing the aforementioned treating, examining, and consulting sources, Plaintiff's extensive medical records, and Plaintiff's testimony, the ALJ found that Plaintiff had an RFC to perform the full range of light work without significant limitations. R. at 15. The ALJ found that Plaintiff had no limitations in sitting, standing, or walking, that she was capable of lifting and carrying up to 20 pounds, and was not precluded from pushing/pulling occasionally with the upper extremities. *Id.* Further, the ALJ found that Plaintiff has no limitations in pushing/pulling with the lower extremities. *Id.* The ALJ did note that Plaintiff could not perform frequent overhead reaching with her left upper extremity. *Id.*

### F. Dr. Goldman's Post-Decision Report

After the ALJ issued her decision, but prior to the Commissioner's final ruling, Plaintiff provided the Appeals Council with a report from Dr. Donald Goldman, M.D. Dr. Goldman evaluated Plaintiff on May 10, 2011 and found that Plaintiff had pain with a decreased range of motion of the cervical spine, atrophy in the left trapezius, decreased strength upon left shoulder shrug, pain of the left acromioclavicular ("AC"), left shoulder pain, grip weakness, pain in the left knee with flexion, left knee weakness and limited range of motion, and limping due to left knee pain. R. at 352–53. Dr. Goldman diagnosed Plaintiff with adhesive capsulitis and chronic

tendonitis of the left shoulder, cervical derangement and left radiculopathy, and internal derangement of the left knee. *Id.* at 354.

Based on this diagnosis, Dr. Goldman found that Plaintiff would be unable to work in any capacity that required walking more than two blocks and that she was unable to walk on an uneven surface. R. at 355. Dr. Goldman also found limitations in kneeling, squatting, bending, twisting, stooping, rotating the neck, working at shoulder level or above, pushing, pulling, lifting, carrying, and sitting more than twenty to thirty minutes. *Id.*

Dr. Goldman also submitted a Spinal Impairment Questionnaire, in which he diagnosed Plaintiff with adhesive capsulitis in the left shoulder, cervical derangement and radiculopathy, and internal derangement of the left knee. R. at 356. This was based on a number of clinical findings, including limited range of motion, tenderness, and muscle spasm in the cervical spine, sensory loss in the arm, left-sided muscle atrophy and weakness related to the cervical spine, and an abnormal gait. *Id.* at 356–57. Dr. Goldman analyzed Plaintiff's prior MRI and x-rays in reaching his diagnosis. *Id.* at 358.

Dr. Goldman ultimately opined that Plaintiff could sit for 2-3 hours total, stand or walk for 2-3 hours total, and occasionally lift or carry up to 10 lbs, with no lifting above the shoulder. *Id.* 359–60. Furthermore, Plaintiff could not work a regular job requiring sustained pushing, pulling, bending, kneeling, or stooping. *Id.* at 361–62. Like Drs. Sultan and Adeniola, Dr. Goldman also found that Plaintiff would likely miss more than three days of work per month because of her impairments. *Id.* Dr. Goldman found that Plaintiff's symptoms and limitations had been present since 2008. *Id.* at 362.

The Appeals Council stated that it consider this evidence, but held that it did not provide a basis for changing the ALJ's decision. *Id.* at 1–2.

—14—

**III. The ALJ's Alleged Errors**

Plaintiff argues that the ALJ and Appeals Council erred when they found that Plaintiff had the RFC to perform a full range of light work, and therefore, was not entitled to disability benefits. Specifically, Plaintiff alleges that the ALJ: 1) failed to properly weigh the medical evidence and support her RFC with substantial evidence in the record, and 2) failed to properly evaluate Plaintiff's credibility. Dkt. 14 (Plaintiff's Memo of Law in Support of a Judgment on the Pleadings ("Pl.'s Br.")), at 10–19. Further, Plaintiff alleges that the Appeals Council failed to properly consider Dr. Goldman's reports. *Id.* at 19–20.

### A. The ALJ Failed to Properly Weigh the Medical Evidence

The Court finds two primary errors with the ALJ's weighing of the medical evidence in determining Plaintiff's RFC. *First*, the ALJ accorded the consultative examiner more weight than was justified by the evidence. *Second*, the ALJ failed to base her decision on a properly submitted medical opinion when she held that Plaintiff had no limitations in walking or standing.

#### *1. Dr. Bellini's Opinions Should Not Have Been Afforded Significant Weight*

The ALJ afforded the conclusions of the consultative examining doctor, Dr. Bellini, significant weight. R. at 22. Dr. Bellini examined Plaintiff once, did not consult any of Plaintiff's treatment records or diagnostic studies, and engaged in diagnostic and examination procedures functionally similar to those of the treating and examining sources, Drs. Adeniola and Sultan, respectively. *Id.* at 17–19. Ultimately, Dr. Bellini concluded that Plaintiff is unrestricted in sitting, "mildly limited" in standing, walking, climbing, and bending, and moderately restricted in certain activities with the left upper extremity. *Id.* at 22. For the reasons below, substantial evidence did not justify affording Dr. Bellini's opinions significant weight, and the ALJ applied incorrect legal standards in weighing Dr. Bellini's opinion.

—15—

In general, "a consulting physician's opinions or report should be given limited weight." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). "This is justified because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons.'" *Id.* (quoting *Torres v. Bowen*, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988)); *see also Pogozelski v. Barnhart*, 03-CV-2914, 2004 WL 1146059, at *13 (E.D.N.Y. May 19, 2004) (Gleeson, J.); *McVey v. Shalala*, 92-CV-1127, 1994 WL 764194, at *11 (E.D.N.Y. Oct. 19, 1994) (Amon, C.J.) (collecting cases).

Furthermore, "[w]hile the opinions of treating or consulting physicians need not be reduced to any particular formula," the Circuit has held that consultative opinions that merely use the terms "moderate" and "mild" in describing limitations, without more, are typically "so vague as to render [them] useless in evaluating" the claimant's RFC. *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (rejecting "mild" and "moderate" descriptions from a consultative examiner when used by ALJ to find claimant could perform sedentary work), *superseded by statute on other grounds*; *see also Burgess v. Astrue*, 537 F.3d 117, 128–29 (2d Cir. 2008). Without further development, such cursory phrases deprive the ALJ, "a layperson notwithstanding her considerable and constant exposure to medical evidence," of the ability to meaningful evaluate whether a claimant can fulfill the requirements of her RFC. *See Curry*, 209 F.3d at 123.

Here, both issues associated with giving a consulting examiner's opinion significant weight manifested in the ALJ's analysis. Considering that Dr. Bellini was only a consulting examiner who examined Plaintiff on one occasion and who only conducted the most basic of clinical analysis in evaluating Plaintiff, there was no basis to give Dr. Bellini's opinions significant weight.

*See Cruz*, 912 F.2d at 13. In fact, the extent of the examination and detail of findings by Dr. Bellini appear, at best, to parallel those of Drs. Sultan and Adeniola. However, Dr. Bellini's opinions match that of the ALJ's RFC finding, whereas the others did not. Additionally, Dr. Bellini was not provided with Plaintiff's treatment records or diagnostic studies. Pl.'s Br. at 12; *see also* R. at 17, 22, 227–30. This is particularly problematic when evaluating a consultative examiner's opinions as the Commissioner must "give the examiner any necessary background information" about Plaintiff's condition. 20 C.F.R. § 404.1517, 416.917; *see also Burgess*, 537 F.3d at 132 (holding that the opinions of a consultative examiner who did not review diagnostic MRI evidence could not be used to discount the opinion of a treating physician).

Furthermore, the vagueness of Dr. Bellini's opinions was evident in her findings of "mild" and "moderate" limitations—terms that have been deemed useless in formulating a claimant's RFC. *See Burgess*, 537 F.3d at 128–29 (citing *Curry*, 209 F.3d at 123). However, the ALJ found these opinions worthy of significant weight. R. at 22. Dr. Bellini's opinions are archetypal of those that the Second Circuit warned of in *Curry*, since Dr. Bellini gave conclusory and vague evaluations as to Plaintiff's ability to perform various functions. Such evaluations cannot meaningfully inform an ALJ's determination as to the work Plaintiff was capable of performing. *See Curry*, 209 F.3d at 123 ("[U]se of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ . . . to make the necessary inference that [the claimant] can perform the exertional requirements of [the RFC].").

Even the ALJ's decision recognizes the difficulties in affording more than limited weight to such unadorned conclusions. The ALJ stated that she could not give more weight to Dr. Bellini's opinions because she "did not provide specific ranges of weight that the claimant would be able to lift and carry or lengths of time that that she would be able to sit, stand, or walk." R.

at 22. The concept is correct, but the consequence is misguided. The ALJ should not have afforded significant weight to Dr. Bellini's opinions under these circumstances, particularly in light of how diametrically opposed Dr. Bellini's opinions were to those of Plaintiff's treating and examining sources.

On remand, the ALJ shall reevaluate, in the first instance, the weight that should be given to Dr. Bellini's opinions in light of the aforementioned principles.

### 2. The ALJ Failed to Choose Between Properly Submitted Medical Opinions

The ALJ found that Plaintiff had the RFC to perform the full range of light work. In reaching this determination, the ALJ held that Plaintiff "has no limitations in sitting, standing, or walking." R. at 15. However, no medical opinion in the record, at any level of significance, stated that Plaintiff had no limitations in standing or walking. In fact, the consultative examiner, whose opinion the ALJ erroneously afforded significant weight, *see* Sec. III.A.1 *supra*, found that Plaintiff was "*mildly* limited in standing, walking, climbing, and bending due to left knee pain." *Id.* at 17 (emphasis added). The treating and other examining sources also found varying degrees of limitation concerning Plaintiff's ability to stand and walk. *Id.* at 18–19 (Dr. Adeniola finding that Plaintiff "should not stand/walk continuously in a work setting; Dr. Sultan finding that Plaintiff was only able to stand or walk for 2-3 hours in an 8-hour work day). This is of particular concern because "light work" requires "a good deal of standing and walking[.]" 20 C.F.R. 404.1567(b).

In short, the ALJ made the determination that Plaintiff had no limitations in standing or walking, despite the absence of a medical opinion to support that finding. This is clear error.

"[I]t is well-settled that the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion . . . [w]hile an [ALJ] is free to resolve issues of credibility as to lay

testimony or to choose between properly submitted medical opinions, [she] is not free to set [her] own expertise against that of a physician who [submitted an opinion or] testified before [her]." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citing *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)) (internal quotations omitted). "The ALJ is not free to arbitrarily substitute his own judgment for competent medical opinion." *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014), *as am.* (July 30, 2014) (citing *McBrayer*, 712 F.2d at 799) (internal quotations omitted). The ALJ's failure to explain how the evidence supported the RFC finding she reached "frustrate[s] meaningful review, and remand could be appropriate on this basis alone." *Glessing v. Comm'r of Soc. Sec.*, 13-CV-1254, 2014 WL 1599944 (E.D.N.Y. Apr. 21, 2014) (Cogan, J.) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (internal quotations omitted). In fact, the ALJ has the "affirmative duty to develop the administrative record" if she determines that a gap exists. *See Burgess*, 537 F.3d at 129.

Accordingly, the ALJ is directed on remand to either identify and properly weigh a medical opinion justifying the finding that Plaintiff has no limitations in standing or walking, or to reevaluate Plaintiff's RFC in light of the medical opinions before her.

## B. **Plaintiff's Testimony Was Erroneously Rejected as Incredible**

Plaintiff argues that the ALJ wrongly rejected her testimony regarding the disabling effects of her medical impairment. The Court agrees. The ALJ misapplied two of the Commissioner's regulations that warrant remand. *First*, the ALJ impermissibly compared Plaintiff's claims to a pre-determined RFC. *Second*, the ALJ solely relied upon purportedly objective medical evidence in rejecting Plaintiff's testimony as incredible.

While SSA regulations require an ALJ "to take the claimant's reports of pain and other limitations into account, he or she is not required to accept the claimant's subjective complaints

without question." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (alterations omitted) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)); *see also Fontanarosa v. Colvin*, 13-CV-03285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (Brodie, J.). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 603 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). Second, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). "The ALJ will consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa*, 2014 WL 4273321, at *12 (citing *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012)). "To the extent that a claimant's allegations of pain 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Id.* (quoting *Meadors v. Astrue*, 370 F. App'x 179, 184 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3) (i)-(vii))).

In making a credibility determination, the ALJ must consider seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain or other symptoms; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ committed two errors in rejecting Plaintiff's credibility that mandate remand. *First*, the ALJ applied an improper legal standard in concluding that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. at 20. The cases in this Circuit are clear that assessing a plaintiff's credibility after making an RFC determination warrants remand, as the SSA "regulations provide that the ALJ must assess the claimant's credibility *before* evaluating the RFC." *Genier*, 606 F.3d at 49 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1529(a)-(b), 404.1512(b)(3), and S.S.R. 96–7p)); *see also Fernandez v. Astrue*, 11-CV-3896, 2013 WL 1291284, at *19 (E.D.N.Y. Mar. 28, 2013) (Irizarry, J.). "To properly assess Plaintiff's credibility, the ALJ should have compared Plaintiff's statements to the objective medical evidence in the record." *Id.* (citing *Smollins v. Astrue*, 2011 WL 3857123, at *11 (E.D.N.Y. Sep.1, 2011) (Gleeson, J.)). The failure to apply the proper legal standard in weighing Plaintiff's credibility is, alone, a basis for remand. *See Otero v. Colvin*, No. 12–CV–4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013) (Gleeson, J.); *Box v. Colvin*, -- F. Supp. 2d ---, 2014 WL 997553, at *21 (E.D.N.Y. 2014) (Spatt, J.); *Maldonado v. Comm'r of Social Sec.*, No. 12–CV–5297, 2014 WL 537564, at *17 (E.D.N.Y. Feb. 14, 2014) (Orenstein, M.J.); *Fernandez*, 2013 WL 1291284, at *19; *Smollins*, 2011 WL 3857123, at *11; *see also Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (rejecting "moderate and "mild" limitations as boilerplate language and finding that it "implies that ability to work is determined first and is then used to determine the claimant's credibility.").

*Second*, the ALJ erred in exclusively relying upon her reading of objective medical evidence to reject Plaintiff's assertions regarding her symptoms. *See* 20 C.F.R. § 404.1529, 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your

pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). When conducting a credibility inquiry, the ALJ is required to consider all of the factors listed in 20 C.F.R. § 404.1529(c)(3) and explain how she balanced those factors. *See Simone v. Astrue*, 08-CV-4884, 2009 WL 2992305, at *11 (E.D.N.Y. Sept. 16, 2009) (Sifton, J.). Here, the ALJ failed to meaningfully consider the full range of § 404.1529(c)(3) factors. *See Grosse v. Comm'r of Soc. Sec.*, 08-CV-4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (Garaufis, J.) (finding that ALJ committed legal error because he failed to consider factors two through seven).

In her analysis, the ALJ found that Plaintiff "engages in a reasonably broad range of daily living activities." R. at 21. However, the ALJ ignored the extent and degree of limitations alleged by Plaintiff, fixated on the consultative examiners notations, and failed to provide a reasoned non-medical basis for rejecting Plaintiff's testimony. The record included Plaintiff's testimony that: she was unable to walk for more than one and a half blocks without pain, R. at 39; that she could only sit for 40 minutes and stand for 35 to 40 minutes, *id.*; that even when sitting to watch TV, she would get up and stand during commercials to alleviate the discomfort from sitting too long, *id.* at 40; that could not do any household tasks, including laundry, cleaning, and cooking, *id.*; that she only attended church once or twice a month when a van could pick her up, *id.* at 42; that when she did go on walks, it appears to have only been for one block, *id.* at 41; and that she had trouble dressing herself approximately four times per week, *id.* at 42. Additionally, Plaintiff explained that she was limited because of sharp, "unbearable" pain in her left shoulder and the left side of her body that she felt "[a]ll the time" and "all day." *Id.* 143, 155. That the ALJ found these to be a "reasonably broad range of daily living activities[,]" *id.* at 21, "belies common sense," *see Fernandez*, 2013 WL 1291284, at *19 (finding that "cleaning

twice a week, performing odd jobs around the house once a month, walking a few blocks or driving a short distance to visit friends and family two to three times a week, walking two blocks to attend church once a week, sitting in the yard, and lying on the couch to watch television" could not be held to be "extensive daily activities").

The reasoning behind the ALJ's holding also lacks a basis in the record. The ALJ's rejection was chiefly rooted in Plaintiff's failure to provide an explanation for why she needed assistance with her household tasks. R. at 21.[6] However, the record is replete with consistent and logical reasoning offered by Plaintiff for her limitations in dressing and performing household tasks, namely, the chronic bursitis, spondylosis of the cervical spine, a distal phalanx fracture, and chronic back pain she has alleged throughout her application for benefits. *Id.* at 19. In sum, it defies reason to state there is no indication or explanation of why Plaintiff cannot perform household tasks because the record contains substantial evidence of injuries to Plaintiff's left upper extremity that would clearly restrict an individual's ability to do laundry, clean, or cook. The ALJ's reasoning is particularly vexing because the ALJ herself held that Plaintiff had restricted use of her upper left extremity. *See* R. at 15.

In sum the ALJ's review of Plaintiff's daily activities was exclusively attacked for lack of supporting medical evidence, save for the one irrelevant example of Plaintiff dressing herself at a

---

[6] The ALJ also attacked Plaintiff's credibility based on Plaintiff's ability to attend medical and public assistance appointments. R. at 21. However, the Second Circuit has consistently held that a claimant does not need to be an invalid in order to be found disabled. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citing *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)). "When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." *Nelson,* 882 F.2d at 49 (finding that Plaintiff's ability to iron and attend college classes was insufficient to show he could perform sedentary work).

single doctor's appointment.[7] As the regulations clearly state, medical evidence alone cannot serve as the basis for rejecting a claimant's statements about the limiting effects of her symptoms and, therefore, the ALJ applied an improper legal standard in rejecting Plaintiff's credibility. On remand, the ALJ must explicitly discuss each of the seven factors before rejecting Plaintiff's credibility.

Additionally, it is worth noting that the ALJ provided no discussion of Plaintiff's prior work history, which appears to have been substantial. The ALJ is admonished that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983); *see also Milien v. Astrue*, 10-CV-2447, 2010 WL 5232978, at *10 (E.D.N.Y. Dec. 16, 2010) (Gleeson, J.) (finding error where the ALJ failed to consider that plaintiff "left her long-standing place of employment only when her symptoms took a dramatic turn for the worse"). On remand, the ALJ must determine whether Plaintiff's work history as a school substitute/special education teacher, a home health aide, and a real estate agent, R. at 35, warrant granting Plaintiff's testimony greater credibility, *see Fernandez*, 2013 WL 1291284, at *20 (remanding when ALJ failed to "evaluate Plaintiff's long work history in making a credibility assessment").

### C. The Appeals Council's Finding that the New Evidence Would Not Change the ALJ's Decision

Plaintiff's final alleged error is that the Appeals Council should have found that Dr. Goldman's report provided a basis for changing the ALJ's decision.

---

[7] This one instance of Plaintiff having no issue dressing herself is especially irrelevant considering that Plaintiff's testimony is that she only had trouble dressing herself four times per week. R. at 42.

"Additional evidence submitted after an ALJ's determination must be both relevant to the claimant's condition during the time period for which benefits were denied, and present a reasonable possibility that [it] would have influenced the [ALJ] to decide the claimant's application differently." *Fox v. Barnhart*, 137 F. App'x 395, 396 (2d Cir. 2005) (internal quotations omitted). The standard for remanding based on new evidence alone is strict: "the court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" *Smollins*, 2011 WL 3857123, at *11 (citing 42 U.S.C. § 405(g)); *see also Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004) (new evidence is "material" if (1) it is "relevant to the claimant's condition during the time period for which benefits were denied," (2) it is "probative," and (3) there is "a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently") (quotation marks and brackets omitted).

As the Court is remanding this action for other reasons, there is no at this juncture need to determine whether or not the Appeals Council should have found that Dr. Goldman's report would have changed the ALJ's determination. However, the Court finds it "appropriate to direct the Commissioner to consider the new evidence at issue as part of the record on remand." *Smollins*, 2011 WL 3857123, at *11. Accordingly, on remand, the ALJ shall consider whether Dr. Goldman's report in determining whether Plaintiff is disabled.

## CONCLUSION

For the reasons stated herein, the Decision of the ALJ is VACATED. Accordingly, Plaintiff's cross-motion for judgment on the pleadings is GRANTED, and Defendant's motion to affirm the ALJ's decision is DENIED. This matter is hereby REMANDED to the Social Security Administration for further consideration consistent with this Opinion.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 22, 2014
         Brooklyn, New York